UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AARON K. MARSH,

           Plaintiff,

vs.                                   Case No.   2:03-cv-162-FtM-29SPC

DEPARTMENT OF CHILDREN AND FAMILIES, KATHLEEN KEARNEY, Former Secretary, GREGORY VENZ, Executive Director, LIBERTY BEHAVIORAL HEALTHCARE CORPORATION, FLORIDA CIVIL COMMITMENT CENTER, ROBERT BRIODY, Doctor and Executive Director, FNU CAULY, Doctor Clinical Staff, MICHAEL LIPSCOMB, Doctor Clinical Staff, JACK YOUMANS, Facility Safety Director, WILLIAM K. LANDERS, Facility Safety Manager, JAMIE LANDERS, Facility Safety Manager, FNU WHITE, Therapeutic Community Coordinator, FNU DANIELS, Therapeutic Community Coordinator, FNU CARTEL, Therapeutic Community Coordinator, DESOTO COUNTY SHERIFF'S OFFICE, VERON KEEN, Sheriff, JOHN J. FUGATE, Sheriff, and JOHN A. RAYMAKER, Investigator

           Defendants.
_____

**OPINION AND ORDER**

Plaintiff, Aaron K. Marsh, proceeding *pro se* and *in forma pauperis*, initiated this action while a civil detainee housed at the Florida Civil Commitment Center ("FCCC") awaiting commitment pursuant to FLA. STAT. § 394.910 (a "Jimmy Ryce Trial").[1]  Due to

---

      [1]Subsequent to filing this action, Plaintiff pled *nolo*
(continued...)

Plaintiff's *pro se* status, the Court permitted Plaintiff to amend his complaint on various occasions.  See Order dated June 27, 2003 directing Plaintiff to file Amended Complaint(Doc. #8), Plaintiff's Amended Complaint filed July 30, 2003 (Doc. #10); Plaintiff's First Amended Complaint filed April 20, 2004 (Doc. #21); and Order dated March 16, 2006 directing Plaintiff to file Second Amended Complaint (Doc. #27).

Plaintiff is proceeding on his Second Amended Complaint filed on April 3, 2006 (Doc. #28) which identifies the following defendants:  The Department of Children and Families ("DCF"); Kathleen Kearney, Secretary of DCF; Gregory Venz, Interim Director of the Sexually Violent Predator Program for DCF; John A. Raymaker, Investigator, DCF; Liberty Behavioral Corporation ("Liberty"); Robert Briody, Executive Director of Liberty; Dr. Cauley, Clinical Staff at FCCC; Dr. Lipscomb, Clinical Staff at FCCC; Jack Youmans, Safety Director at FCCC; William Landers, Facility Safety Manager, FCCC; Jamie Landers, Facility Safety Manager; Mr. White, Therapeutic Community Coordinator at FCCC; Mr. Daniels, Therapeutic Community Coordinator at FCCC; DeSoto County Sheriff's Department; and Officers John Fugate and Vernon Keen, DeSoto County Sheriff's Department.

---

[1](...continued)
*contendre* to assault and battery charges against another FCCC resident and was transferred from the FCCC to a Florida penal facility.

Plaintiff's Second Amended Complaint stems from a March 28, 2002 incident at the FCCC that ultimately resulted in Plaintiff being placed in restraints, held in secure management confinement, and a search of Plaintiff's room. The Second Amended Complaint alleges violations of the Federal Mental Health Patient Bill of Rights; the American with Disabilities Act; the First, Fourth, Fifth Amendment, Eighth, and Fourteenth Amendments; and the Florida Civil Rights Act. Plaintiff seeks $3 million in damages from each Defendant.

## I.

Despite repeated warnings from the Court, and although captioned "Statement of Case and Facts," the factual narrative of Plaintiff's Second Amended Complaint is rife with legal arguments, references to legal citations and statutory language, and countless conclusions of law. Although not specifically identified on the caption, the Second Amended Complaint improperly attempts to state claims on behalf of three other FCCC inmates: Jordan Fletcher, Adrian Shilon, and Reginald E. Jones.

At the outset, the Court finds no factual allegations whatsoever in Plaintiff's Second Amended Complaint to invoke the application of the American with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). Plaintiff does not state that he has any qualifying disability. Rather, it

appears that Plaintiff predicates a cause of action under the ADA solely on the fact that a state court judge found probable cause that Plaintiff met the statutory definition of a sexually violent predator to warrant his civil confinement. Plaintiff's civil commitment pursuant the Jimmy Ryce Act does not *ipso facto* render him a qualified individual with disabilities under the ADA. See 28 C.F.R. § 35.104(5)(disability as defined in the Act expressly excludes "sexual behavior disorders").

Nor does the Second Amended Complaint state a claim under the Federal Mental Health Patients Bill of Rights, 42 U.S.C. § 10841, promulgated pursuant to the Mental Health Systems Act, 42 U.S.C. § 9501, et. seq., since this legislation does not create a private cause of action. Id. at § 10851 (a). Greer v. Hillsborough County Sheriff Dep't, NO. 8:04-cv-2034-T-23MSS, 2005 WL 2416031 (M.D. Fla. Sept. 30, 2005); Brooks v. Johnson & Johnson, Inc., 685 F. Supp. 107 (E.D. Pa. 1988). Furthermore, the legislation neither requires nor prohibits any actions on the part of the state or any other party, but rather offers recommendations to the states for the treatment of mentally ill persons. Id. at § 10841 (precatory language of the statute is clear by the use of the word "should").

The Second Amended Complaint, in a conclusory fashion, claims numerous constitutional violations such as: retaliation, denial of freedom of religion, discrimination, conspiracy, equal protection, cruel and unusual punishment, and medical indifference.  These claims, however, are raised peripherally without any arguable

factual basis to support them. Additionally, the Second Amended Complaint incorrectly identifies entities that are not considered "persons" amendable to suit, including: the FCCC facility, DCF, and the DeSoto Sheriff's Department. Finally, the Second Amended Complaint inappropriately attributes liability to a number of defendants solely on the basis of *respondent superior*.

## II.

Giving Plaintiff the benefit of his *pro se* status and liberally construing Plaintiff's Second Amended Complaint, the Court finds the Second Amended Complaint, at most, sets forth the following three claims: 1) a Fourteenth Amendment violation for allegedly maliciously prosecuting Plaintiff based on false statements resulting in Plaintiff being placed in restraints and in confinement; 2) a Fourth Amendment violation for the alleged illegal search of Plaintiff's dormitory room by Defendants Keen and Fugate; and, 3) a Fourteenth Amendment violation for allegedly denying Plaintiff due process in connection with Plaintiff's initial and continuing placement in secure management confinement. From an examination of the Second Amended Complaint, the Court has gleaned the following factual averments germane to these three claims.

On March 28, 2002, Defendants William Landers, Jamie Landers, White and Daniels entered E Dorm and ordered all FCCC residents back into their rooms to be locked in "because the staff was having

problems placing resident Otis Head back in Confinement in 1100 wing." Second Amended Complaint, ¶32. Plaintiff describes his room as not a "private living room" but rather an "open bay prison dorm." Id. ¶24. At 2:16 pm, after the residents refused to return to their rooms, Defendants Briody, Youmans, William Landers and Jamie Landers ordered FCCC officials to lock all grill gates in E-Dorm. Id. ¶33. Plaintiff was in his room at the time of the incident when Defendant Daniels "locked all wing bar grill gates" preventing Plaintiff "from coming out into the day rooms." Id. Shortly thereafter, Defendant Youmans "ordered staff . . . to return to E-Dorm to lock all residents in their rooms." Id. ¶34. Because Plaintiff and other residents "refuse[d] to be locked down," Defendants Briody, Youmans, William Landers and Jamie Landers summoned the DeSoto Sheriff's Department to the FCCC "stating there is a full scale riot with all Residents armed with weapons. " Id. ¶35. Neither Plaintiff nor the other residents were armed with weapons. Id. Plaintiff, along with three named residents returned to their cells "without any physical contact with staff" but were "the last ones to go in their cells." Id. ¶36. Some residents did have "physical contact with staff." Id.

Defendants Keen and Fugate from the DeSoto County Sheriff's Department entered the dormitory in which Plaintiff was housed and "check[ed] all the cell doors to make sure they were secure." Id. Defendants Bridoy, Youmans and William Landers and Jamie Lander made "slanderous remarks" about Plaintiff to Defendants Keen and

Fugate telling them "Plaintiff took off his shirt and covered himself with oil in preparation for a physical conflict." Id. ¶39. Defendants Keen and Fugate approached Plaintiff and "asked him if he would move on his own while pointing a shot gun at [him] through the cell door flap." Id. ¶36. Defendant White asked Plaintiff to "put his hands outside the flap in his door so they can put handcuffs on him." Plaintiff states he only complied with the orders because he was "threaten [sic] by weapons." Id. Defendant White placed handcuffs around Plaintiff's wrists and then put shackles on Plaintiff's legs. Id.

Plaintiff was taken to the FCCC's confinement wing. Id. ¶38. Defendants Keen and Fugate "without a search warrant" went back to the Plaintiff's room with a "drug dog" to "conduct a search." Id. ¶40. Plaintiff "mailed a legal complaint" about the March 28, 2002 incident to Defendant Haymaker requesting an investigation into Defendants' "misconduct" and Plaintiff's "immediate release" from confinement. Defendant Haymaker did not investigate the matter or respond to Plaintiff's "legal complaint." Id. ¶41.

On March 29, 2002, Plaintiff received a memo from Defendants Briody, Vaughn, Youmans and W. Landers stating

> You have been placed on secured management status for participating in a disturbance. The length of time you will remain on secured management status will depend on your willingness to participate in programs designed to control these tendencies. Clinical staff will evaluate you at the earliest possible time.

Id. ¶47.  On April 1, 2002, R. Kunkle, Performance Improvement Coordinator at the FCCC, advised Plaintiff that "you were placed in secure management because you refused to go to your room."  Id. ¶48.  On April 5, 2002, Plaintiff received a memorandum from Dr. Cauley that stated:

> Additionally you have not adequately addressed the fact that you took off your shirt and covered yourself with oil in preparation for physical conflict, nor have you addressed the fact that you broke out a window after being placed in Secure Management. Therefore, it appears at this time as if you continue to present a threat to the safety and security of this facility, we will continue to evaluate you each working day [sic]. We look forward to your taking responsibility for the incident, discussing your role in the conflict, and your achieving a more relaxed and calm demeanor.

Id. ¶49.

On May 1, 2002, Plaintiff was transferred from the FCCC to Miami-Dade County on an unrelated "criminal proceeding."  Id. ¶50.

### III.

Plaintiff invokes this Court's subject matter jurisdiction. The federal *in forma pauperis* statute, 28 U.S.C. § 1915, allows this Court to dismiss any indigent's complaint if this Court determines that the action "is frivolous or malicious" or "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(I), § 1915(e)(2)(B)(ii).  In essence, § 1915(e)(2) is a screening process, to be applied *sua sponte* and at any time during the proceedings.  Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings

drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). A complaint is frivolous under § 1915 if it lacks "arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2002), cert. denied, 540 S. Ct. 1112 (2004); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1315 (11th Cir. 2002); Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.), cert. denied, 534 U.S. 1044 (2001). A complaint fails to state a claim when it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Mitchell v. Farcass, 112 F.3d 1483, 1489-90 (11th Cir. 1997) (acknowledging that Fed. R. Civ. P. 12(b)(6) standards govern a § 1915(e)(2)(B)(ii) dismissal). The Court must accept well pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

By way of background, the State of Florida enacted the Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act ("Jimmy Ryce Act"), §§ 394.910-.913 FLA. STAT., by which a person determined to be a sexually violent predator[2] is required to be housed in a secure facility "for

---

[2]A "sexually violent predator" is defined by the Act as any person who:

(continued...)

control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." FLA. STAT. § 394.917(2). The Jimmy Ryce Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002). See also Kansas v. Hendricks, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive).[3]  Thus, involuntary commitment of sexually violent predators under the Ryce Act is accomplished by a civil, rather than a criminal proceeding. In its statement of "findings and intent," the state legislature said that the Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment

---

[2](...continued)
   (a) has been convicted of a sexually violent offense; and

   (b) suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for log-term control, care, and treatment.

Section 394.912(10), FLA. STAT. (2002).

[3] "Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects. See Kan. Stat. Ann. § 59-29a01-a20 (Supp. 2001)." Westerheide, 831 So. 2d at 99 n.6.

under the Baker Act (§§ 394.451-394.4789, FLA. STAT.)" § 94.910, FLA. STAT. (2000).

Residents at the FCCC are considered "totally confined" and therefore are subject to internal regulations much like those established by the Florida Department of Corrections. See FLA. STAT. § 394.912(11). A person who is civilly committed is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001)(in that "the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments"). Consequently, the Court concludes that persons at the FCCC who are civilly committed have at least the constitutional rights possessed by a prisoner.

**IV.**

1. **Fourteenth Amendment- Malicious Prosecution/False Arrest**

Plaintiff claims that the actions of Defendants Briody, Youmans, William Landers and Jamie Landers' in calling the DeSoto Sheriff and "ma[king] a false report" was "with evil motive to cause physical harm" because Plaintiff "could have been shoot [sic] with shotguns and bitten by the K-9 dog." Id. ¶35. Further, Plaintiff contends that Defendants Keen, Fugate and White "had no arrest warrants or probable cause to order Plaintiff out of his room/cell to be placed in handcuff and leg-irons, to arrest him, and to place him in confinement." Id. ¶36.

To the extent Plaintiff claims that the reports made by Defendants Briody, Youmans, William Landers and Jamie Landers that subjected Plaintiff to disciplinary confinement were false, such claims are premature. In Heck v. Humphrey, 512 U.S. 477, 489 (1994) (footnote and citations omitted), the United States Supreme Court stated that a § 1983 cause of action "attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." A "conviction" for purposes of Heck, includes a ruling in a prison disciplinary proceeding "based on allegations of deceit." Edwards v. Balisok, 520 U.S. 641, 648 (1997); Stone-Bey v. Barnes, 120 F.3d 718, 721 (7th Cir. 1997) ("The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success of the plaintiff's section 1983 claim necessarily would imply the invalidity of that finding, then Heck bars the claim until such time as its requirements are satisfied.").

Based on the allegations of Plaintiff's Second Amended Complaint, Plaintiffs' § 1983 claim with respect to his placement in secured management has not yet accrued because he has not alleged that the disciplinary charges for which he was placed in secure management confinement terminated in his favor. Therefore Plaintiff's claim that he was "maliciously prosecuted" because he was falsely charged fails to state a claim upon which relief may be granted. See Rivera v. Allin, 144 F.3d 719, 731 (11th Cir.) (the district court's dismissal of a § 1983 claim regarding a

-12-

disciplinary report on the basis of Heck was tantamount to a dismissal for failure to state a claim upon which relief may be granted), cert. dismissed, 524 U.S. 978 (1998).

Similarly, the Court finds Plaintiff's Fourth Amendment claim[4] against Defendants Keen, Fugate and White is fatally flawed. First, assuming plaintiff's removal from his dormitory room, placement in restraints, and being escorted to confinement constitutes a "seizure" for Fourth Amendment purposes, the Second Amended Complaint makes clear that Defendants Keen and Fugate committed no constitutional violation since they acted with probable cause. "An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003). On the other hand, "an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003)(citations omitted). An arresting

---

[4] The Fourth Amendment to the United States Constitution provides that the federal government shall not violate "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."

officer is "not required to shift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002).

Here, Plaintiff admits that Defendants Keen and Fugate were acting upon information provided by FCCC officials that Plaintiff was inciting a riot and preparing for physical conflict. Regardless of the validity of this information, Defendants Keen and Fugate clearly had a "sufficient basis" to believe that Plaintiff had acted improperly at the time that Plaintiff was removed form his room, restrained and taken to confinement. Consequently Plaintiff's Second Amended Complaint fails to state a claim for a Fourth Amendment violation. Dahl 312 F.3d at 1234.

### 2.  **Fourth Amendment- Search and Seizure**

Plaintiff argues that Defendants Keen and Fugate violated Plaintiff's right to privacy by conducting a search of his room without a search warrant or without Plaintiff being present. Second Amended Complaint, ¶40.

This Court notes that the Supreme Court has determined that "a right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson v. Palmer, 468 U.S. 517, 527-28 (1984). While this Circuit has determined that

prisoners "retain a *limited* constitutional right to bodily privacy" this right must be evaluated on a "case-by-case basis" Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993); Boxer v. Harris, 437 F.3d 1107 (11th Cir. 2006). This right to privacy is subject to further limitations that are reasonably related to "legitimate penological interests." Turner v. Safely, 482 U.S. 78 (1987).

The Court recognizes that Plaintiff, although not a "prisoner" for purposes of the Prison Litigation Reform Act ("PLRA"), Troville v. Venz, 303 F.3d 1256 (11th Cir. 2002), was confined to a "secure facility" pursuant to the Jimmy Ryce Act upon a probable cause determination that Plaintiff meets the statutory definition of a sexually violent predator, due to his previous state conviction for a sexually violent offense. See §394.910, FLA. STAT. Here, the dormitory room to which Plaintiff is assigned at the FCCC, albeit not a cell, is not protected by the Fourth Amendment. Hudson v. Palmer, 468 U.S. 517 (1984). Plaintiff cannot reasonably argue that he has a legitimate "expectation of privacy" in his "open bay prison dorm" that Plaintiff concedes lacks privacy. Second Amended Complaint, ¶24.

Similarly, imposing a blanket prohibition against searches of a resident's living area is inherently inconsistent with the facility's needs of ensuring security and implementing rules and regulations. Block v. Rutherford, 468 U.S. 576 (1984). Consequently, the Court finds that the Second Amended Complaint

fails to adequately state a claim with respect to Plaintiff's right to privacy.

### 3. **Fourteenth Amendment - Due Process**

Finally, Plaintiff claims that Defendants Briody, Youmans, William Landers and Jamie Landers "didn't call clinical staffs [sic] or mental health personal [sic]" prior to ordering the residents in E-Dorm to be locked down as required by Florida's mental health statutes. Second Amended Complaint, ¶34. Further, Plaintiff states that he did not receive any "written notice of why [he was] placed into secured management." Moreover, Plaintiff claims that: he was not provided with a hearing for the allegations; was not told for what length of time he would remain in confinement; was not told what he had to do to be released from confinement; and was not permitted to call his attorney for three days. Id. ¶42.

The gravamen of Plaintiff's due process argument is that residents of the FCCC are subject to the same state regulations as individuals who are involuntarily civilly confined for mental health reasons, i.e. individuals who are confined under Florida's Baker Act. The Court notes that the state legislature expressly recognized that commitment under the Baker Act was "inappropriate" for individuals sought to be committed under the Jimmy Ryce Act. Supra at 10.

Irrespective of whether Florida's mental health statutes apply to residents at the FCCC, the Court finds Plaintiff has not alleged

-16-

a violation of a right created by the United States Constitution or the laws of the United States.  "Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002).  Any argument that a violation of state law gives plaintiff a viable substantive due process claim has been foreclosed by the United States Supreme Court.  Lovins v. Lee, 53 F.3d 1208, 1211 (11th Cir. 1995)(citing Collins v. City of Harker Heights, Texas, 503 U.S. 115 (1992)).  See also McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)(*en banc*)(substantive rights created only by state law are not subject to substantive due process protection because substantive due process rights are created only by the United States Constitution).  Therefore, no § 1983 claim is stated by virtue of an officials alleged failure to comply with the tenets of the Florida mental health statutes.

Moreover, Plaintiff's own factual chronology of the events expressly refutes Plaintiff's claimed due process violations. Plaintiff was told on several occasions why he was put on secure management confinement: He was placed on secured management status for participating in a disturbance and refusing to go to his room. (Second Amended Complaint, ¶¶ 47 and 48.)  Plaintiff was advised how long he would remain in confinement: Plaintiff held the "keys" to his confinement. Plaintiff was required to participate in programs which would address his conduct and he needed to address

and take responsibility for his past conduct. Id. ¶¶47 and 49. Plaintiff was advised how he could get out of confinement: he would be evaluated by clinical staff "at the earliest possible time" and evaluated "each working day." Id. ¶¶47 and 49. In fact, it is clear that Plaintiff's continuing confinement was the result of his own actions: "nor have you addressed the fact that you broke out a window after being placed in Secure Management." Id. ¶49.

The Court finds Plaintiff's duration in confinement for 45 days neither punitive nor excessive. Plaintiff's confinement was based on the FCCC's officials' belief that Plaintiff posed a "threat to the safety and security of this facility." Id. ¶49. Moreover, it is clear that Plaintiff was "evaluate[d] . . . each working day." Id. It is clear that the procedures, which Plaintiff acknowledges he was provided with, were more than adequate in providing Plaintiff with due process. Sandin v. Conner, 115 S.Ct. 2293 (1995); Youngberg v. Romero, 457 U.S. 307 (1982); Sheley v. Dugger, 833 F.2d 1420 (11th Cir. 1987). Thus, the Second Amended Complaint fails to state a claim for violations of Plaintiff's due process rights stemming from Plaintiff's initial or continuing placement in secure management confinement.

With respect to any other remaining claims not specifically addresses herein, the Court finds the Second Amended Complaint fails to allege facts sufficient that gives rise to the level of a constitutional violation. Consequently, for all the above-stated reasons, this case is dismissed pursuant to 28 U.S.C. § 1915(e)(2).

ACCORDINGLY, it is hereby

**ORDERED**:

1. Plaintiff's Second Amended Complaint (Doc. #28) is **DISMISSED** without prejudice.

2. The **Clerk of Court** shall: (a) enter judgment accordingly, (b) terminate any pending motions; and (c) close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this __25th__ day of August, 2006.

JOHN E. STEELE
United States District Judge


SA:   hmk
Copies: All Parties of Record